IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Choice Hotels International, Inc., | Civil Action No.: 4:13-01961-BHH |
| Plaintiff, | |
| vs. | **ORDER AND OPINION** |
| Zeal, LLC, Harshil J. Shah, Pranay Parekh, Chhaya Parekh, Rajan Gupta, and Monica Garg, | |
| Defendants. | |

This matter is before the Court on Defendants' motion to reconsider (ECF No. 95) and on the parties' submissions regarding the appropriate measure of damages in this case (ECF Nos. 92-94). For the reasons set forth herein, the motion to reconsider is denied.

## BACKGROUND

The Court assumes familiarity with the facts and procedural history of this case, which are set forth in detail in the Court's September 29, 2015 order granting summary judgment in favor of Plaintiff (ECF No. 90).

## STANDARD OF REVIEW

### Rule 59

"In general, reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). The Fourth Circuit has held such a motion should be

granted for only three reasons: (1) to follow an intervening change in controlling law; (2) on account of new evidence; or (3) to correct a clear error of law or prevent manifest injustice. *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). The Fourth Circuit has held that "[a] prior decision does not qualify for this third exception by being 'just maybe or probably wrong; it must . . . strike [the Court] as wrong with the force of a five-week-old, unrefrigerated dead fish.'" *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009) (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec. Inc.*, 866 F.2d 228, 233 (7th Cir.1988)). Rule 59 motions "may not be used to make arguments that could have been made before the judgment was entered." *Hill v. Braxton*, 277 F.3d 701, 708 (4th Cir. 2002). Nor are they opportunities to revisit issues already ruled upon simply because a litigant is displeased with the result. *See Hutchinson*, 994 F.2d at 1082 (stating that "mere disagreement does not support a Rule 59(e) motion") (citation omitted).

**Rule 60**

"[B]efore a party may seek relief under Rule 60(b), a party first must show 'timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances.'" *Dowell v. State Farm Fire and Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993) (quoting *Werner v. Carbo,* 731 F.2d 204, 207 (4th Cir. 1984)). "After a party has crossed this initial threshold, he then must satisfy one of the six specific sections of Rule 60(b)." *Dowell*, 993 F.2d at 48. Rule 60(b) of the Federal Rules of Civil Procedure allows the court to relieve a party from a final judgment for the following reasons:

> . . . (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence by which due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud

2

> (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

"A judgment is not 'void' under Rule 60(b)(4) merely because it is erroneous. 'It is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.'" *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 817 (4th Cir. 2004) (quoting *Schwartz v. United States*, 976 F.2d 213, 217 (4th Cir. 1992)).

The Court assumes that Defendant is seeking relief under Rule 60(b)(6), which allows for modification for "any other reason justifying relief from the operation of the judgment." "While this catchall reason includes few textual limitations, its context requires that it may be invoked in only 'extraordinary circumstances' when the reason for relief from judgment does not fall within the list of enumerated reasons given in Rule 60(b)(1)-(5)." *Aikens v. Ingram*, 652 F.3d 496, 500 (4th Cir. 2011). Rule 60(b)(6) should not be applied in a manner that would undermine other rules, such as Rule 59. *See id.* at 501.

## DISCUSSION

### I. Motion to Reconsider

Defendants' motion for reconsideration must be denied because Defendants have not directed the Court to an intervening change in controlling law, have not presented any new evidence, and have not demonstrated that the Court's order was a clear error of law or results in manifest injustice. Most of Defendants' arguments rehash points the Court rejected in the detailed analysis in its order and require no further explication.

3

The Court does, however, wish to address Defendants' contention that the Court is unfairly penalizing them by refusing to consider the documents they submitted on August 28, 2015, and September 2, 2015 (ECF Nos. 85–88). Here are the relevant passages from Defendants' motion to reconsider.

> The Court relied on the testimony of Defendants' Rule 30(b)(6) representative to calculate the amount of profits in this case. In doing so, the Court disregarding [sic] the financial information that was provided by the Defendants pursuant to instruction of the Court at the hearing on this matter. It should be noted that the material at issue in this case was produced by the Defendants after they were granted leave by the Court at hearing to produce this material. Further, the documents regarding profits were produced within the time frame specified by the Court's instruction. Only the clarifying affidavit was submitted late - by one day.
> …
>
> The undersigned submits that the Court abused its discretion in this case by imposing a penalty on the Defendants for merely doing what the Court instructed them to do - that is produce evidence demonstrating that their profits in this case were less than the figure relied upon by the Court in its damages calculation. By the Court's own observation, this information included materials which were not available to be produced during discovery in this case. The undersigned submits that the Court's exclusion of this information worked to its prejudice and therefore constitutes an abuse of discretion.

(ECF No. 95-1 at 13-14.)

Defendants' recounting of the Court's refusal to consider the documents conveniently omits most of the details that were relevant to the Court's decision, which were carefully set forth in the Court's order. First, the Court detailed the significant lengths to which Plaintiff went in an attempt to obtain information about Defendants' profits through the discovery process and described Defendants' stubborn refusal to produce the requested information, which was clearly relevant and discoverable. (*See* ECF No. 90 at 31-33.) Second, the Court explained that the documents that Defendants

4

ultimately submitted (many of them after the deadline set by the Court) were not accompanied by any calculations or explanation of their significance. (*See id.* at 34-35.) It is a trademark defendant's burden to distinguish its profits from its proceeds, and this is not accomplished by simply dumping hundreds of pages of tax returns, financial statements, and bank records on the Court and the opposing party with no argument or explanation. It is not the duty of the Court or Plaintiff to dig through these records and calculate profits when Defendant has not made any effort to present a specific figure and explain how the documents support that figure.

Finally, the Court explained that it was refusing to consider the documents because, upon reviewing them, the Court came to doubt very seriously defense counsel's representation that Defendants had given Plaintiffs everything they had.[1] As the Court explained:

> When defense counsel indicated to the Court that the defendants had produced everything they had, the Court assumed that the defendants' records had been lost, destroyed, or were otherwise unavailable and that Zeal, LLC was going to have to try to recreate its expenses through, for example, invoices, receipts, checks, or some other source of information that was not readily available. The Court was shocked to receive tax

---

[1] Defendants' motion to reconsider claimed that "[b]y the Court's own observation, [the documents relevant to a calculation of profits] included materials which were not available to be produced during discovery in this case." (ECF No. 95.) The Court assumes Defendants are referring to the Court's observation regarding the availability of Zeal's 2014 tax return in footnote 9 of its order. Here is the complete text of what the Court wrote:

> The Court notes that Zeal, LLC's 2014 tax return does not appear to have been available until August 22, 2015, ***but the defendants could have easily provided other records*** of their deductible costs for 2015, especially since they knew that the ligation had been filed and such information had been requested prior to 2015. At a minimum, they could have advised the plaintiff that their 2014 tax information would not be available until now. ***There is nothing to suggest that the other documents, including the 2013 tax return, were unavailable***.

(ECF No. 90 at 35 n.9 (emphasis added).) A fair reading of this note does not suggest that the absence of this record was a justification for Defendants' failure to produce the requested financial information or that Defendants' claim that it had produced everything they had was accurate.

> returns from a CPA and bank records from one of the largest financial institutions in the United States (BB&T). It is inconceivable to the Court that copies of these documents could not have been obtained during the discovery period. Absolutely no explanation was provided, either in the response to the motion for summary judgment or the recent submissions, for the defendants' repeated refusal to produce the information requested.

(*Id.* at 35.)

The Court is not accusing defense counsel of intentionally misleading the Court, but the Court understood him to say at the hearing that Defendants had given Plaintiff all the documents in their possession relevant to a determination of the hotel's profits. Assuming the best of defense counsel, the Court treated the claim as a miscommunication and continues to do so. This assumption does not mitigate in any way, however, the prejudice that would result to Plaintiff were the Court to consider the documents submitted after summary judgment motions were briefed and argued. This is not an instance of the Court sticking to a deadline for a deadline's sake. To evaluate the late submitted documents, which the Court would never have invited had it realized their nature, the Court would not only have to require Defendants to supplement their submission, it would have to re-open discovery to allow Plaintiff a fair opportunity to challenge the proposed calculations and or the accuracy of the records upon which such calculations would depend. (*See id.* at 36.)

Even so, the Court held out to Defendants a final opportunity to explain why they were not able to produce the records when Plaintiff *repeatedly* sought them through the discovery process and a motion to compel. (*See id.* ("Unless the defendants can provide a compelling explanation for why these documents were not produced in discovery, the Court will be forced to accept the plaintiff's calculation of the defendants' profits . . . ").)

Defendants declined the Court's invitation to provide an explanation in their supplemental submissions on damages, a decision which the Court accepts. What the Court does not accept or understand is Defendants' contention that the Court unfairly reneged on a commitment to allow them to establish their profits outside of the discovery period. The Court's summary judgment order thoroughly explained the basis for the Court's decision, and Defendants' motion to reconsider did not meaningfully address the Court's reasoning. Accordingly, the Court declines to reconsider its prior ruling.

As a final matter, the Court acknowledges Plaintiff's Notice of Non-Compliance (ECF No. 98), in which Plaintiff asserts that Defendant has "failed to comply with the terms of the permanent injunction and ORDER issued by this Court on September 29, 2015." (ECF No. 98 at 1.) Defendants admit their noncompliance and assert that Plaintiff's motion is premature because "the Court has not yet ruled on the matters raised by Defendants in their memoranda filed with the Court and on the issues raised in their Motion for Reconsideration." (ECF No. 99 at 1–2.) Defendants provide no authority in support of this position and the Court finds their offered reason for noncompliance to be without merit. Defendants must comply with the terms of the September 29, 2015 Order or risk being held in Contempt of Court, as requested by Plaintiff.

## II. Supplemental Briefing on Damages

As explained in the Court's summary judgment order, a plaintiff who prevails in a trademark infringement action under the Lanham Act may seek to recover the infringer's profits, damages resulting from the infringement, costs of the action, and in exceptional cases, attorneys' fees. Because the parties' briefing addressed primarily the issue of

liability, the Court requested that they submit supplemental briefing on the amount to be awarded. Specifically, the Court asked the parties to address whether the Court should exercise discretion to reduce an award based on the infringer's profits, whether the Court should treble the amount it found in damages, and whether it should award Plaintiff attorneys' fees. (*See* ECF No. 90 at 37.)

The Court's summary judgment order provided that within 21 days "the parties may submit briefing on these topics, not to exceed 10 pages." Defendants submitted two separate briefs (ECF Nos. 92 and 93), each of them 9 pages long. Plaintiff objects that the submissions are not in compliance with the Court's instruction, and while the Court intended for the parties to submit a single brief on the enumerated topics not to exceed 10 pages, because its instruction was not explicit, it has reviewed both of Defendants' briefs and will consider the arguments therein.[2] Plaintiff worries aloud in its brief that the 10 pages afforded by the Court are insufficient to allow it to adequately address the "factual and legal inaccuracies contained in [its defendants briefing]," and suggests that oral argument may be necessary. (ECF No. 94 at 1–2.) The Court, however, finds the authorities cited by Plaintiff to be helpful and does not believe that further briefing or oral argument is necessary for the Court to fix an award in this case. The Court is now very familiar with the parties' contentions and the relevant law, and the determination of an

---

[2] Whatever advantage Defendants otherwise might have enjoyed by being allowed to file two briefs is nullified by their decision to spend the first five pages of both briefs rehashing (in virtually identical form) factual contentions the Court has already considered. Defendants did so despite the Court's explicit instruction that the supplemental briefing was "not an opportunity for the defendants to challenge the Court's determinations on the merits or to ask the Court to recalculate the defendants' profits." (ECF No. 90 at 38 n.10.)

appropriate award is, at this point, largely a matter of discretion. The Court therefore proceeds with assessing Plaintiff's monetary recovery.[3]

The Fourth Circuit has identified six equitable factors to be considered in making a damages award under the Lanham Act. These factors include:

> (1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off.

*Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006) (quoting *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 349 (internal quotation marks omitted)). A prevailing party is not required to make a showing on any one factor or even a majority of the factors, *see id.* at 175–76, and different or additional factors may be considered if the circumstances require, *id.* at 176. In all cases, the Court must "weigh the equities of the dispute and exercise its discretion on whether an award is appropriate and, if so, the amount thereof." *Id.*

The Court will briefly discuss each of these factors.

As for the first factor, whether the defendant had the intent to confuse or deceive, the Fourth Circuit has held that "although willfulness is a proper and important factor in an assessment of whether to make a damages award, it is not an essential predicate thereto." *Synergistic,* 470 F.3d at 175. Thus, "a lack of willfulness or bad faith should weigh against an award of damages being made, but does not necessarily preclude such an award." *Id.*

---

[3] The Court's summary judgment order exhaustively outlines the standard for recovery of monetary damages under the Lanham Act. (ECF No. 90 at 30–31.)

Defendants suggest that far from seeking to capitalize on Plaintiff's mark, the allegedly poor performance of the hotel gave the Defendants a reason not to associate their establishment with Plaintiff's brand. (*See* ECF No. 95-1 at 11 ("There is no evidence . . . that the fact that the property had been previously operated as an Econo Lodge played any part in [the] decision to rename the property. In fact, the evidence presented to the Court establishes that the property was not successfully operating as an Econo Lodge making desire to imply any future association with the Plaintiff's brand unlikely.").) It defies commonsense to believe that a business with no desire to associate itself with the prior tenant would operate a virtually identical business with a virtually identical name on the very same property. As the Court observed in its summary judgment order, "the defendants replaced one term denoting a residence with another term denoting a residence in the middle of the mark. It is hard to imagine many other ways that they could have changed the wording of the plaintiff's mark and still had it sound as similar." (ECF No. 90 at 17–18.)

Such evidence, coupled with the fact that Defendants clearly knew that Choice Hotels owned a trademark for Econo Lodge Inn and Suites when they chose to rename the property with a virtually identical name, indicates that Defendants were willfully blind to the fact that they were infringing on Plaintiff's trademark. Courts have held that such "willful blindness could provide the requisite intent or bad faith." *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991) (noting that "whether a defendant has been willfully blind will depend on the circumstances"); *Novadaq Techs., Inc. v. Karl Storz Gmbh & Co.*, 2015 WL 11110632, *1 (N.D. Cal. Dec. 11, 2015) (finding

jury issue on whether defendant "deliberately intended to deceive customers" where a reasonable jury could "conclude that [defendant] was willfully blind to the possibility that it would infringe [plaintiff's] mark").

Here, the Court finds that the above evidence supports the inference that Defendants, at a minimum, intended to confuse its customers in order to capitalize on Plaintiff's trademark. *Cf. George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 396–398 (4th Cir. 2009) (finding no evidence that defendant intended to mislead and capitalize on plaintiff's trademark for a dice game where defendant understandably chose the phrasing at issue to describe its own dice game, where the marks did not look or sound alike, and where plaintiff's packaging did not lead to the inference that plaintiff "sought trademark rights" on the contested phrasing). While the Court cannot find that such evidence indicates bad faith *per se*, "a lack of . . . bad faith . . . does not necessarily preclude . . . an award [of damages]." *Synergistic*, 470 F.3d at 175.

As for the second factor, whether sales have been diverted, the Court must examine whether Plaintiff "lost sales as a result of [Defendant's] trademark infringement activities and the extent to which [Plaintiff] had entered the market area where the infringement occurred." *Synergistic*, 470 F.3d at 175. Here, Plaintiff asserts it lost $148,225.53 in franchise fees from Defendants' infringement—this is the amount Defendants would have paid had they made the hotel a proper franchisee of Plaintiff. (ECF No. 94 at 5.) The record does not reveal the extent to which Plaintiff had entered the market area where the infringement occurred.

The third factor asks the Court to examine the adequacy of other remedies. "If an injunction is an adequate remedy, this factor should weigh against a damages award." *Synergistic*, 470 F.3d at 176. Here, the Court notes Defendants have not complied with the terms of the permanent injunction ordered by the Court on September 29, 2015. Without citing any supporting authority, Defendants assert that they need not comply with the permanent injunction until the Court rules on their motion for reconsideration. (ECF No. 99 at 1–2.) Such blatant noncompliance indicates that monetary damages should also be awarded to curtail any continued infringement.

The fourth factor asks whether there was any unreasonable delay by the plaintiff in asserting his rights. Here, the Court finds that Plaintiff promptly asserted its rights in this action—there is no evidence of unreasonable delay.

The fifth factor addresses the public interest in making the misconduct unprofitable. The Court must strike a balance "between a plaintiff's right to be compensated for the defendant's trademark infringement activities, and the statutory right of the defendant to not be assessed a penalty." *Synergistic*, 470 F.3d at 176. Here, Defendants' actions have misled the public, as evidenced by the naming of Plaintiff as a party in a lawsuit brought by one of Defendants' patrons, who alleged that he was injured at Defendants' hotel. However, the Court remains mindful that any damages award "should constitute compensation and not a penalty." 15 U.S.C. § 1117(a).

Finally, the sixth factor asks whether this is a case of palming off. Here, the Court looks to whether Defendant "used its infringement of [Plaintiff's] mark to sell its products, misrepresenting to the public that [Defendant's] products were really those of the

[Plaintiff]." *Synergistic*, 470 F.3d at 176. In the Court's summary judgment order, it found "defendants used both the plaintiff's mark and the 'new' mark in connection with the sale, offering for sale, distribution, or advertising of goods and services, specifically, lodging accommodations at the Subject Property." (ECF No. 90 at 5.)

Based on the above analysis, the Court finds that the *Synergistic* factors favor awarding damages.

### A.    Treble Damages

The Court begins with the question of whether it should treble the damages of $148,225.53 that it found its summary judgment order. This figure is drawn from an estimate of the fees that Defendants would have been required to pay to Plaintiff had they continued to operate as an Econo Lodge franchisee. 15 U.S.C. § 1117(a) provides in relevant part: "In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount . . . . Such sum . . . shall constitute compensation and not a penalty."

Plaintiff argues that the damages found by the Court of $148,225.53, which represents an estimate of the fees that Defendants would have been required to pay to Plaintiff to continue as a Econo Lodge franchisee, should be trebled to deter similar conduct in the future. Plaintiff reasons that would-be infringers will be incentivized to take their chances if the cost of infringement is simply paying the franchise fee that would otherwise be due, particularly if the infringer expects profits to be small or non-existent. (*See* ECF No. 94 at 5-6.) The Court finds this reasoning persuasive, and notes that other

courts have found that considering a need for deterrence does not convert a compensatory award into a punishment. *See La Quinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 342 (6th Cir. 2010) (quoting *Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 113 (2d Cir. 1988)) ("So long as its purpose is to compensate a plaintiff for its actual injuries—even though the award is designed to deter wrongful conduct—the Lanham Act remains remedial.").

The Court also agrees with Plaintiff that a finding of willfulness is not required to justify enhanced damages. *See ALPO Petfoods, Inc. v. Ralston Purina Co.*, 997 F.2d 949, 955 (D.C. Cir. 1993) ("An enhancement is appropriate to compensate a Lanham Act plaintiff only for such adverse effects as can neither be dismissed as speculative nor precisely calculated . . . . Lost profits and market distortion are, however, appropriate bases for the catch-all enhancement contemplated by § 35(a)."). Accordingly, the Court will treble the $148,225.53 and award Plaintiff $444,676.59 in trademark owner damages.

### B. Infringer Profits

As thoroughly explained in the Court's summary judgment order, a plaintiff who establishes trademark infringement may also be entitled to recoup the infringer's profits. As set forth in the Court's order, Plaintiff's burden is simply to show the Defendants' proceeds during the period of infringement. The burden then shifts to Defendants to establish deductions that reduce the figure from proceeds to profits. As thoroughly discussed in the Court's order and above, Defendants have not carried their burden to establish any deductions, and, as noted, the law is clear that a court may treat the

14

proceeds figure as profits even if this results in a substantial windfall to the plaintiff. (*See* ECF No. 90 at 30–31 (citing cases).) However, the law is also clear that a court retains considerable discretion to modify an award in the interests of justice. *See* 15 U.S.C. § 1117(a) ("If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.").

Here, Plaintiff has established that Defendants' gross profits for the term of the infringement are $2,366,506.80—an admittedly substantial amount. On the one hand, the Court has no desire to impose staggering liability on a small business and its owners. On the other hand, the Court does believe that an award of profits is appropriate, and Defendants have provided no reasonable explanation for their repeated refusal to turn over the financial information needed to make these calculations during the discovery period. Still, given the sizable treble damages awarded, the Court finds it "just, according to the circumstances of the case," to reduce the amount awarded here by 50%. 15 U.S.C. § 1117(a). Such a reduction makes it more likely that Plaintiff recovers Defendants' profit margin, rather than the gross revenue. Failing to take Defendants' profit margin into account "would almost certainly penalize [Defendants] instead of compensating [Plaintiff]." *Muhler Co. v. Window World of N. Charleston LLC*, No. 2:11-CV-00851-DCN, 2014 WL 4269078, at *7 (D.S.C. Aug. 28, 2014) (using a 50% profit margin to award plaintiff the defendant's profits, rather than the gross revenue, finding such amount to be "just, according to the circumstances of the case" (quoting 15 U.S.C. § 1117(a))); *see also A & M Records, Inc. v. Abdallah*, 948 F. Supp. 1449, 1459 (C.D.

Cal. 1996), *as amended* (Nov. 21, 1996) (estimating 50% expenses where the defendant offered no proof of operating costs and expenses, thereby reducing the amount of defendant's gross profit). Therefore, Plaintiff is entitled to $1,183,253.40 of Defendants' profits.

### C.     Attorneys' Fees

Finally, the Court will consider whether to award Plaintiff attorneys' fees. In "exceptional cases" involving violations of the Lanham Act, reasonable attorneys' fees may be recovered by the prevailing party. 15 U.S.C. § 1117(a). "Under 15 U.S.C. § 1117(a), a case is 'exceptional' if the defendant's conduct was malicious, fraudulent, willful or deliberate in nature." *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 370 (4th Cir.2001) (internal quotations omitted). The Fourth Circuit has held that "for a prevailing plaintiff to succeed in a request for attorney fees, she must show that the defendant acted in bad faith." *Scotch Whisky Ass'n v. Majestic Distilling Co.*, 958 F.2d 594, 599 (4th Cir. 1992). However, "[a] court may find that, despite acting willfully or in bad faith, attorney's fees are not appropriate." *Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, 868 F. Supp. 2d 468, 499 (D. Md. 2012) (denying attorney's fees after finding that "this case is not 'exceptional'"); *see also Doughney*, 263 F.3d at 370 (affirming district court's denial of attorney's fees where district court found that defendant "did not act with the level of malicious, fraudulent, willful or deliberate behavior necessary for an award of attorney fees"); *Buzz Off Insect Shield, LLC v. S.C. Johnson & Son, Inc.*, 606 F. Supp. 2d 571, 591 (M.D.N.C. 2009) ("although the jury found that the

infringement . . . was willful, the Court has nevertheless concluded that [it] should not be characterized as malicious, fraudulent, or in bad faith").

Here, the Court has found that the evidence supports an inference that Defendants were willfully blind to their infringement on Plaintiff's trademark. However, the Court has not expressly characterized Defendants' conduct as malicious, fraudulent, or in bad faith. Given this finding, and the significant amount of damages already awarded, the Court declines to award Plaintiff attorney's fees.

## CONCLUSION

For the reasons set forth above, Defendants' motion to reconsider (ECF No. 95) is **DENIED**. The Court awards Plaintiff treble damages in the amount of $444,676.59 and finds that Plaintiff is entitled to $1,183,253.40 of Defendants' profits. However, the Court declines to award Plaintiff attorneys' fees. In addition, given Defendants' admitted noncompliance with the terms of the permanent injunction as set forth in the Court's September 29, 2015 Order, the Court restates those terms below and directs Defendants to comply:

Defendant Zeal, LLC is hereby (1) enjoined from using any of Plaintiff's ECONO LODGE marks, including the marks appearing in the '642 Registration; the '814 Registration; the '518 Registration; the '530 Registration; the '688 Registration; the '065 Registration; the '067 Registration; and the '199 Registration; or any mark confusingly similar thereto, including the ECONO STUDIOS INN & SUITES designation; (2) ordered to remove all signage, advertisements, menus, websites or any other indicia bearing any of the above referenced marks or the ECONO STUDIOS INN & SUITES designation; (3)

ordered to destroy any item in its custody or control bearing any of the above referenced marks and/or the ECONO STUDIOS INN & SUITES designation; and (4) ordered to file a sworn statement of compliance within thirty (30) days of this Order.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

July 29, 2016
Greenville, South Carolina